Good morning, Your Honors. My name is Kathleen Pakenham, and I am here today to speak on behalf of Stanley Crow and S. Crow Collateral. I'll refer to them today as the taxpayers in this matter. I have 15 minutes for argument this morning, and with the Court's permission, I will reserve three minutes and I'll keep my eye on the clock. And we'll try to help. Thank you. I appreciate all the help I can get. This is an appeal from a decision of the United States District Court for the District of which the Court denied our motion for an evidentiary hearing and granted the IRS's motion to enforce an IRS summons. The relief we're asking for today is a reversal and a remand with an instruction to the lower court to allow for an evidentiary hearing. The evidentiary hearing is simply for the purpose of determining whether or not we should be entitled to take some discovery into the IRS's purpose for issuing the summons at issue. And what's the standard for getting that evidentiary hearing? Your Honor, the standard is well established. Cases go back nearly 40 years at this point. The burden on the taxpayer in that situation is to come forward with specific facts and evidence that lead to a plausible inference of bad faith by the government or an improper purpose in issuing the summons. The court here erred because it failed to apply that standard which is most recently set forth in United States v. Clark and because we did come forward with those specific facts and evidence that would lead to a plausible inference of improper purpose. Yes, Your Honor. One thing that gets lost in the briefing here is that what the dispute is actually over, as I understand it, is about a summons to a third party. That's correct. For specific information? Yes. So why is it that we are not focusing on whether that information that's being requested in that summons goes to the question of investigating Mr. Crow as opposed to somebody else? There's all this emphasis on what happened in the discussions between Mr. Crow's lawyers and the IRS lawyers before the summons was issued about whether they said that they wanted a list or didn't want a list. What relevance is that? I mean, the question is whether this summons was asking for information that would go to Mr. Crow's potential liabilities. And I would appreciate that discussion because it's not in either brief, really. Certainly, Your Honor. Thank you for the opportunity to address that question. The issue here is whether or not the summons was issued for a proper purpose. And the fundamental is, was this summons issued in order to investigate Mr. Crow or was it issued to investigate third parties? And if it was not issued, if there really was no audit of Mr. Crow Are you saying if that was the purpose, I mean, that that's a sufficient showing of bad faith? It is a sufficient showing of bad faith if the summons were not issued in furtherance of an investigation of Mr. Crow. If the only reason the summons was issued was to investigate third parties, was to identify who the counterparties were, that is bad faith. It is stated quite clearly in the Supreme Court's decision, Tiffany Fine Arts v. United States. For example, one of the things asked for was disbursement of banking records for S. Crow Collateral Corporation, including but not limited to check copies of wire Tourette's for confirmation and deposited items. That certainly sounds like an investigation of Crow Collateral. So I think there's two points there. One is that the government has to come forward with a prima facie case as to whether or not the summons should be enforced. We agree that they did so here because the agent's declaration goes to all four prongs in the Powell decision. But two of the separate prongs in Powell are relevance, and another one is whether or not there is proper purpose. So it is conflating relevance and proper purpose, because what the Court's question really is saying is if there were a legitimate examination of Mr. Crow, then that information would be relevant to that examination. What evidence do you have or what inferences can you draw that would suggest to us that the IRS is not investigating Mr. Crow for purposes of tax liability? Certainly, Your Honor. They've certainly been talking to him an awful lot for somebody who's not interested in his tax status. Well, I would disagree with that statement, Your Honor. So we came forward with kind of categories of specific facts. And to be clear, the standard is that we come forward with specific facts, not just a bald assertion, hey, you're not auditing us. We did come forward with specific facts. And the question really is what inference can be drawn from those facts. Could one inference that would be plausible that can be drawn from those facts is that there really is not an examination of Mr. Crow. So to your question, Your Honor, what is it that they did or that they didn't do that would lead to that what we think is a plausible inference to be drawn from those facts? First, we cite five specific conversations with an internal revenue agent in which the only thing that he focused on in any of those conversations was the list of counterparties. Give me the list. Give me the list culminating in a statement by the IRS. But two things. First of all, as I understand it, the liability here was not Mr. Crow's or it was not primarily Mr. Crow's own, whether he brought his own income properly for taxes. It was whether he was promoting a tax scheme, which therefore required knowing what he was saying to other people and what those other people and who those other people were in order to talk to them and see what he advised them. So this is not a situation in which those third parties were extraneous to the investigation of Mr. Crow. They were integral to the investigation of Mr. Crow. That's right. And that, again, goes to the question of relevance. If there were an examination of Mr. Crow, would that information be relevant? But the relevance, all these relevant. It could be essential to identify who the third parties were if you were conducting an examination of Mr. Crow. But that's not the only specific fact. And an inference that could be drawn from the intense focus on counterparties. That's why I went to the summits, because maybe it seems pretty obvious the reason they weren't asking Mr. Crow for anything else was because they were going to get it from the horse's mouth, basically. They were going to get the documents or they wanted to get the documents that specifically answered those questions and from somebody that they regarded as reliable other than Mr. Crow. So why did they need to get it from Mr. Crow? Well, that's an inference that you're drawing from that. So for example, in a situation like this one where the government is conducting, if they were conducting, a true promoter audit, they start with the alleged promoter because that is the person or entity that has access to all of the information. They have all of the transactional documents. You get that information. You identify who the counterparties are. But you don't go, you go to the source of the information. You don't identify 50 different sources. That's what the summons is doing. It's going to the source. Well, the summons is going to Pioneer Title, which is a third party, to get some pieces of paper from the third party. But it's not just the focus, the entire focus on the list of names. It's other factors as well. It's the fact that the government has never asked for essential information to conduct the audit it says it's conducting. That would only be in the hands of Mr. Crow. For example, and we lay out a number of examples in the brief, but for example, you have to determine Mr. Crow's personal income. The government never asked him for that. You're telling the IRS in order to conduct this in good faith, you need to do your investigation in a certain order that we would prefer that you do. I wish I could say that, Your Honor, but that's not the case. We, the taxpayer does not have the authority to compel the government to conduct its examination in any particular way. But what I'm saying is the argument you're making is that the only way they can show their good faith is to conduct it in the order that you're now saying. No, I'm not saying that, Your Honor. What I'm saying is when you look at the cumulative set of facts and inference that can be drawn from that cumulative set of facts is that Mr. The government is not really conducting an examination of Mr. Crow. To be fair, could a alternative inference also be drawn from those facts to say that, well, yes, they're conducting an examination, maybe not in the most sensible way, maybe not in the way that you taxpayer would say that they should be conducting that examination, but you could say that there might be an examination going on here. You know, if I were Mr. Crow, and the charge that was being investigated, not yet brought, but the charge was that I'm promoting false tax benefits, I'm promoting abusive transactions, and so on, the last people in the world I want the IRS to be I understand why you're opposing the subpoena, but I also understand exactly why the IRS wants to talk to those people, because the charge is, or the suspicion is, that he's promoting abusive tax treatment in cooperation with those people. Well, Your Honor, again, that goes to the question of whether or not the names of those people would be relevant if there were an examination of Mr. Crow. You can't really split those two things up, because if they're not only relevant, but central, the notion that they were seeking central information to Mr. Crow's tax liability, but really didn't care about Mr. Crow, becomes more and more implausible. Well, so the question also is, what's the, I just want to also make sure that I've got on the table really the categories of information that we say lead to the inference. The other thing is that Mr. Crow repeatedly offered additional information to the government, offered to meet with the government, offered to get technical advice from the IRS's national office, which has all been met with silence, and in fact, there has been no contact. Everything except what they want. Well, no, Your Honor, because the transactional documents would include the names of the counterparties, so we have repeated. Are you saying, I don't want to put words in your mouth, but these, the refusal to meet with Mr. Crow or accept his offers and so forth, is that, in your judgment, a sufficient showing of bad faith? I think when it is in conjunction with all of the other factors. It's not, well, this one particular fact... I haven't heard too many factors that, like what else? Sure. Just tick them off without, you know, going into extensive discussion. Sure. What other factors are there that point to bad faith? I would say there are five here. One is the repeated and exclusive emphasis on the names of the counterparties. The second is the willingness to forego additional request of information to Mr. Crow when the agent said, all I want is the list of names. The third is the fact that the government has not requested fundamental information that would be absolutely critical for it to conduct... But they are in the subpoena, in the summons. Some of those things are. No, but those are not the documents that would be fundamental to actually identifying whether or not there is liability under section 6700, 6707, and 6708. Couldn't they get those, you know, seek those documents, I'll say, in the next phase? After they complete, you know, this phase, I'll call it this phase of the inquiry? They could, except that this has been going on since 2015. I guess I'd like to know what, more specifically, what documents you're talking about that are not covered by this summons that would be central in some fashion that they don't want. So, for example, for purposes of determining whether or not there's liability under section 6700, which is one of the provisions, you would need to understand the transaction itself. You would need to understand the fees that the material advisor received, and you would need to understand whether or not this was a listed transaction. If you get disbursement and banking records for escrow collateral, including but not limited to check copies, wire transfer, confirmation, deposited items, are you going to find something out about that? No, because what Pioneer title is the escrow agent for the loan, not with respect to the installment sale, and that is the transaction that escrow collaterals party to. Escrow collateral corporation, so they must have something to do with the underlying transaction and all escrow records for escrow collateral corporation and affiliates. That seems to have to do with the underlying transaction and all settlement statements for transactions transacted by escrow collateral and its affiliate. Those all sound like they have directly to do with the transaction. Some of them do touch on the transaction, but there are other categories of information that would need to be obtained by the government in order to conclude its examination. So, for example, At the end, it's the beginning. Well, that was the beginning in 2000. We've been at this since 2015. And why has this been taking so long? Because the government, I don't know, you'd have to, we'd have to ask the government. No, it's right here in front of us. That your client is not handing over what the government wants. That's not true. This is not a request of information to Mr. Crow. I know, but he's been refusing the request, which is why we now have the subpoena. We have this. Well, that's not accurate either, Your Honor, because we did produce information and we did respond. It's exactly accurate. It's part of consistent with the story that you're telling us. That's part of your case. You keep saying that the government keeps asking him for these names. And this is now a way of getting the names that he's refusing to provide. I mean, that's your affirmative case as to why it's bad faith. Well, so just one point, Your Honor, and I see that I'm almost out of time and I've burned through my rebuttal. So can I just want to end on one point, which is if we are right and hypothetically assume for purposes of this argument that we're right, that there really is no investigation of Mr. Crow, what is it that you would expect to see the government doing? And I would submit that it's exactly what we've seen here, which is it is an exclusive emphasis on the names of the counterparties, that it has been years with no contacts or request for information to Mr. Crow. It is not requesting the fundamental documents that the government would need to conduct its investigation. It's exactly what we would see here. And the bar for a plausible inference of bad faith is quite low. And so we think we've more than met it. And the only question is whether we should be entitled to some discovery on the question of bad faith. Thank you, Your Honor. Just a minute. Let me ask just one question. I think you started out by saying, well, you articulated the governing standard to what's And then I think you stated the government applied the wrong standard. Can you articulate what standard the government applied? Yes, Your Honor. And so it's the standard both the government and the lower court applied. The standard set forth in Clark and in decisions by the Ninth Circuit is that the taxpayer has to come forward with specific facts raising a plausible inference. We know the standard. OK. But the standard that they applied is that it must be the most plausible inference or the only inference that can be drawn from the evidence. And that's just simply not the case. OK. Thank you. Thank you. Now, we've taken you over time despite your best efforts to save some time. We will make sure you get a chance to respond. Thank you, Your Honor. I appreciate it. Good morning, and may it please the court. My name is Nora Bringer, and I represent the United States in this appeal. The issues remaining on appeal are quite narrow. The petitioners agree that the government met its burden to establish a prima facie case under the Powell factors. The petitioners also agree that the IRS is not required to declare whether the summons has a sole purpose of investigating Mr. Crow or a dual purpose of investigating both Mr. Crow and his clients. The petitioners finally agree that the client list at the center of their bad faith allegations would be relevant to a legitimate investigation of Mr. Crow. So the only issue remaining is petitioners' contention that the district court abused its discretion in declining to hold an evidentiary hearing here. The district court did apply the correct standard in determining whether to hold a hearing. By the way, did they ever articulate what they wanted to put on this evidentiary hearing, or what was supposed to happen at this evidentiary hearing? Your Honor, I'm not aware of any articulation of that. When you depose the IRS agents who were... They wanted to cross-examine the IRS agents who... So typically what occurs at an evidentiary hearing, and it's very discretionary to the district court as to how exactly that hearing goes. But typically at an evidentiary hearing, it is an opportunity for a taxpayer who's to examine the IRS agent who issued the summons. And so that's typically what occurs. They would ask him, why didn't you ask us for this kind of information or something like that? I would assume so. It's maybe a question more well put to the other side, but that would be my guess. This is awfully late in the process for this question to be relevant, but here we are, delayed with the appeal, the expense of the appeal. How long would it have taken to have had to put the IRS agent on the stand in the district court and be done with it? And I think most likely, then, sustain the subpoena. Your Honor, that's a fair question. I mean, an evidentiary hearing in a proceeding of this type is typically fairly short, usually less than a day, much less than a day. And I understand the government might want to stand on principle, or once you'd go down the path, you're going to stay on the path. But this could have been resolved even if the government had the right to resist. Just put him on the stand and be done with it. Well, I'll note, Your Honor, that the petitioners are challenging two other third-party summonses that the IRS has issued in this case. And that case is pending in the District of Idaho. We mentioned it in the footnote in one of our briefs. So— How do you respond to the taxpayer's response to my last question about what standard did the district court apply and that the government asked for? And she said something like this, right? That just the court applied the standard that it has to be the most plausible inference, as opposed to just an inference. How do you respond to that contention? Your Honor, the district— Is that your position? No, Your Honor. The government asked the district court to apply the standard from Clark, and that is indeed what the district court did. On pages 31 and 32 of the excerpts of record, the magistrate judges report and recommendation discussing whether to recommend holding a hearing. The magistrate concluded, quote, that petitioners have not plausibly raised an inference of bad faith that would entitle them to an evidentiary hearing under Clark, and that no specific allegations plausibly raise an inference of bad faith. Perhaps more importantly, on excerpts of record page 12, the district court, in its order adopting the report and recommendation, wrote the following. The court finds petitioners have failed to present sufficient evidence plausibly raising an inference of improper purpose. The facts relied upon by petitioners to show an inference of an improper purpose simply do not support such a finding, and petitioners' arguments challenging the summons are unsupported by the record. As such, the court finds the petitioners have failed to show a plausible inference of an improper motive by the IRS. That's a direct application of the standard from Clark. The petitioners argue that the district court applied the wrong evidentiary standard because the magistrate wrote in the report that it was more persuaded on this record— this is page 30 of the excerpts of record. What'd you say? Page what? Page 30 of the excerpts of record. So they rely on this statement in the magistrate's report, that it was more persuaded on this record that the summons is a legitimate dual-purpose summons under Tiffany Fine Arts, such that the John Doe summons procedures in section 7609F do not apply. So the district court's statement on which the petitioners rely with respect to the standard had to do with the district court discussing whether this was a John Doe summons or not a John Doe summons. When the district court was analyzing whether to hold a hearing, it clearly applied the Clark standard, as we've discussed. All right. Would you articulate, just for the record, what the dual purposes are in this case? Your Honor, in this case, the government has not contended that it's a dual-purpose summons. The government's position— I thought you agreed with this magistrate's statement that this is a dual-purpose summons. Your Honor, the government's position is that it does not matter whether the IRS intends only to investigate Mr. Crow or whether it intends to investigate both Mr. Crow and his clients. As long as there is some purpose to get after Mr. Crow's tax records? Yes, Your Honor. That's the holding of Tiffany Fine Arts, is that as long as there is a purpose of investigating the named taxpayer— It doesn't matter what else might be, we'll say, collaterally disclosed. Yes, Your Honor. That is the central holding of Tiffany Fine Arts. It's quite common in IRS investigations, of course, that the IRS will receive information about third parties and trying to determine the liabilities of the person named in the summons. Thank you. One other point that I'd like to touch on is the petitioners rely heavily on a statement from Revenue Agent London in the spring of 2017 that all he wanted from Mr. Crow was a spreadsheet with the names and details of clients. Now, coming out of that statement, the petitioners asked the district court to infer that Agent London was offering to drop all of the records requests given to Mr. Crow in exchange for the client list. The district court declined to make that inference, but the petitioners asked for another inference, which is that then the investigation of Mr. Crow would disappear if he just turned over a client list. The district court didn't make either inference, but even if it had, to the extent that any bad faith could be inferred from Agent London's statement. The question is whether the bad faith is institutional on the part of the IRS. Here, the timeline strongly supports the IRS's pursuit of an investigation of Mr. Crow. The statement was made in the spring of 2017. By July of 2017, a new revenue agent, Agent Lopez, had issued the summons to pioneer title at issue in this case. And by that fall, excuse me, by that fall, the parties were engaged in the summons litigation. Let me ask this question, which goes a little beyond the evidence in front of us, but not very far beyond. The primary evidence offered by your adversary as to support the inference of bad faith is that repeatedly the IRS investigating agent in conversation with Mr. Crow says, just give me the list of the names of your counterparties. What if he had said a little further, or what if the testimony was a little further? That's the only thing I'm interested in. Really, I don't care about your tax liability. That, I think, then turns this into something where maybe it really is a John Doe summons. But of course, Mr. Crow may be lying. We don't know. Now, is he able by, and I'll hypothesize a lie, I'm not saying that there was a lie, is he able by lying to get himself an evidentiary hearing? To see if he's lying? Your Honor, I'd like to answer your question, and if I may make an additional point. Please. So the burden on petitioners to get an evidentiary hearing is to submit evidence, credible evidence of... Well, credible evidence, that's the question. Is he lying? So typically what happens, as happened here, is that the parties submit written declarations to the district court. And the standard that comes down from Clark requires the court to make a judgment call about whether that evidence raises a plausible inference, a bad faith here, that the IRS is not, in fact, conducting the investigation that it says that it is. Hypothetically, could somebody lie on a declaration under penalty of perjury and convince the district court that those facts are credible, the evidence is credible, and then get an evidentiary hearing out of that? Yes, hypothetically, that could happen. But I want to return to the idea that it's not just a question of whether a single IRS agent may have bad faith. The question is really whether the IRS as an institution has bad faith. And so there would need to be more evidence to suggest that the posture of the agent who's alleged to have bad faith had indeed become the posture of the IRS. There are no further questions from the panel. I thank you for your time and ask you to affirm. Thank you. Would you put two minutes on the clock, please? Thank you, Your Honors. I appreciate the additional time. I wanted to address a few of the points that were raised by Ms. Bringer. First, and specifically, there was no finding by the lower court that the declaration submitted by Mr. Crow or any other witness were anything other than credible. The other thing... The declaration didn't quite say what I hypothesized might have been said. That's right. And you would expect, if someone were lying, that they would elaborate and provide a case that was perhaps not as subtle as the one... I've heard your representation repeatedly in the briefs until you were called on it. As I understand it, that the person said something to the effect of, all I want is the list. If you give it to me, I won't ask for anything else. And it turns out he never said the second sentence. And then you say, well, you could infer that, but he didn't say that. And then you further say that you could infer, therefore, from the sentence that wasn't said, that he was not investigating Mr. Crow, but he never said the second sentence, right? That's right. I mean, that's an inference to be drawn from that fact. And in fact, this court in United States v. Stuckey recognizes the position that a taxpayer alleging bad faith against the IRS finds him or herself in, which is the real information about the institutional prerogative and decision-making is within the hands of the IRS. We can only tell the court about what we observe from the outside. I guess I'm a party of one here, but that's why I keep coming back to the actual subpoena. Because in fact, they did ask for a lot more than that list in the subpoena. So in this- How can you draw that inference? So the summons to pioneer title does ask for a list of information, but look at the summons itself. What does it say on the face of it? It identifies a single document, which is the settlement statement. It says, pull that out and put that on top for us so that we can easily access that information. And that is the information with the counterparty names. Your Honor, I'm out of my additional time. May I just make one brief point before I sit down? Thank you. And that's in United States versus Stuckey. The court has recognized that the taxpayer in this position is, quote, we recognize the anomaly of placing a burden of proof on the taxpayer and then denying him access to what may be the information needed to meet that burden. We have asked for a limited evidentiary hearing of the agents who issued the summons. And that was discussed at the lower court, specifically what would be encompassed in that limited evidentiary hearing simply for the purpose of deciding whether we would be entitled to discovery on that point. Thank you. Thank both sides for their argument. S. Crowe Collateral Corporation versus the United States now submitted for decision.
judges: Tashima, W. Fletcher, Berzon